UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CHRYSTAL PRESTON o/b/o**
**THOMAS RAY BRAZEE (deceased),**

 **Plaintiff,**

v.                Case No: 5:16-cv-350-Oc-WTH-PRL

**COMMISSIONER OF SOCIAL**
**SECURITY**

 **Defendant.**

## REPORT AND RECOMMENDATION[1]

Plaintiff, on behalf of her former husband Thomas Ray Brazee,[2] appeals the administrative decision denying his applications for a period of disability and Disability Insurance Benefits ("DIB"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED.**

**I. BACKGROUND**

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> In March 2011, Mr. Brazee (Claimant) filed an application for a period of disability and disability insurance benefits, alleging an onset of disability of November 1, 2008 (Tr. 20, 353). The agency denied his application initially and upon

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

[2] Defendant does not dispute that Plaintiff Crystal Preston (sometimes referenced as Crystal Brazee in the record), the claimant's ex-wife and mother of their two children, is a proper substitute party for Mr. Brazee. For the sake of clarity, the undersigned will use the term "claimant" when specifically referring to Mr. Brazee.

reconsideration (Tr. 124, 166). In August 2011, Claimant died in a motorcycle accident and Ms. Preston (Plaintiff) joined the case as Claimant's substitute party (Tr. 20). In November 2012, an ALJ held a hearing and subsequently issued a decision denying Plaintiff's claim (Tr. 20, 62-86, 168-87). However, in May 2014, the Appeals Council remanded Plaintiff's case to an ALJ to further consider the evidence and Claimant's RFC (Tr. 188-92). The ALJ held an additional hearing on October 23, 2014 (Tr. 20, 45-61). On November 28, 2014, the ALJ issued a decision finding Claimant was not disabled through August 21, 2011, the date he died (Tr. 17-36). On April 1, 2016, the Appeals Council denied Plaintiff's request for review (Tr. 1-6). Plaintiff now seeks review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

(Doc. 19, p. 1-2).

Claimant was 49 years of age on the date of his death. (Tr. 34, 353). Claimant had at least a high school education, and the ability to communicate in English. (Tr. 35, 421, 428). Claimant had past work experience as an auto mechanic, truck mechanic, garbage truck driver/collector, tractor-trailer driver, and a feeder off bearer (Tr. 34, 54-55, 423). Claimant alleged disability due to knee and lower back problems, depression, shortness of breath, headaches, and bilateral hearing loss. (Tr. 210, 353-54, 422). Claimant died on August 21, 2011, following a motorcycle accident. (Tr. 357-62).[3]

Based on a review of the record and the testimony at the hearing, the ALJ found that claimant had the following severe impairments: degenerative disc disease, depression, hearing loss, and chronic obstructive pulmonary disease (COPD). (Tr. 23). The ALJ found that the claimant had the residual functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b) with some limitations. The ALJ expressly concluded:

> [t]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he must be allowed to alternate between sitting and standing three to five minutes per hour, can frequently balance, can occasionally climb ramps, stairs, ladders, ropes and ladders, and he can occasionally stoop, kneel, crouch, and crawl. The claimant requires a semi-quiet work setting, must

---

[3] Plaintiff concedes that, in light of Mr. Brazee's death, a Supplemental Security Income (SSI) claim can not be pursued, citing 20 C.F.R. § 416.542(b) (limiting individuals to whom an underpayment of SSI generally can be paid only to a surviving spouse who was also a recipient of SSI).

avoid concentrated exposure to dust, gas, odors, and fumes. He is limited to simple-unskilled work in a low-stress environment (defined as requiring little to no change in the work setting and little to no need for the use of judgment). He is able to maintain attention and concentration for two-hour increments throughout an eight-hour workday, and can sustain brief and superficial social interaction with the general public and co-workers, but can sustain routine social interaction with supervisors.

(Tr. 25).

Based upon this RFC, and considering the testimony of a vocational expert, and considering claimant's age, education, and work experience, the ALJ determined that claimant could perform work that existed in significant numbers in the national economy. For example, the ALJ cited the vocational expert's testimony that claimant could perform work as a marker, small product assembler, and toll collector. (Tr. 35). Accordingly, the ALJ determined that claimant was not disabled. (Tr. 36).

## II. STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S.

389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III. DISCUSSION

Plaintiff raises two primary issues on appeal: (1) that the ALJ's physical RFC finding is not supported by substantial evidence; and (2) that the ALJ's mental RFC finding is not based on a proper evaluation of the record.

#### A. The ALJ's Consideration of Plaintiff's Physical Limitations

Plaintiff first argues that the ALJ erred by failing to adequately assess the claimant's physical limitations. Specifically, Plaintiff argues that the ALJ failed to give proper consideration to the opinions of Mark Seymour, D.O., and Ms. Pinello, a vocational rehabilitation counselor.

1. <u>Mark Seymour, D.O.</u>

Plaintiff begins by arguing that, despite affording "great weight" to the 2012 opinions of Mark Seymour, D.O., the ALJ gave "less than great weight" to his opinions concerning physical functioning. (Doc. 16). Dr. Seymour, a family practitioner at Gifford Family Health Center, was claimant's treating physician. Dr. Seymour issued a number of opinions about claimant. In June 2011, Dr. Seymour stated that, based on previous visits over the past several years, the claimant had normal memory, and reported no problems with attention and concentration. (Tr. 1372). In August 2012 after claimant died, Dr. Seymour issued a second opinion in which he concluded that the claimant had marked limitation in the ability to understand, remember, and carry out complex instructions and in the ability to make judgments on complex work-related decisions. (Tr. 1461-63). Both of these opinions were assigned great weight by the ALJ. (Tr. 32).

Meanwhile, the ALJ assigned "less than great weight" to a third opinion by Dr. Seymour. On a form entitled "Medical Source Statement of Ability to Do Work-Related Activities (Physical) that was also completed on or about August 2, 2012, Dr. Seymour opined that the claimant can frequently and continuously lift up to 10 pounds, can occasionally and frequently lift up to 20 pounds, and can occasionally lift and/or carry up to 50 pounds. (Tr. 1491-96). Dr. Seymour also also stated claimant needed to change position frequently, and could sit a total of 3 hours in an 8-hour work day, stand a total of 1 hour, and walk a total of 2 hours (for a total of only 6 hours). (Tr. 1492). He opined that claimant had no limitation in the use of his hands, and was limited to frequent operation of foot controls bilaterally due to exacerbation of low back pain. The ALJ reasoned that the opinion regarding back pain was not an objective finding. (Tr. 33). The ALJ also noted that the opinion was unclear as to whether the claimant was limited to 6 hours of light-

medium work only when he had an exacerbation, and the opinion did not answer that question. (Tr. 33).

Plaintiff argues that the ALJ's basis for discounting this opinion is inadequate and failed to consider the evidence in context. Specifically, Plaintiff cites Dr. Seymour's reference to claimant's chronic back pain and an April 2009 MRI. (Tr. 1491). Plaintiff also argues that any review of the evidence must consider that Dr. Seymour's opinion is supported by other record evidence, examples of which are claimant's willingness to receive multiple rounds of epidural injections, claimant's reduced strength, a subsequent MRI in May 2011, and evidence from Dr. Lake regarding low back pain and disc degeneration. (Doc. 16, p. 19).

The law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Further, the opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

As Defendant argues, in this case the ALJ did state with particularity the weight given to Dr. Seymour's opinions. Indeed, lengthy portions of the decision are devoted to Dr. Seymour's opinions; the ALJ went so far as to identify the multiple different opinions given by Dr. Seymour

and explain the weight given to each. (Tr. 32-33). With regard to Dr. Seymour's opinion regarding physical limitations, particularly that the claimant was limited to sitting, standing and walking a total of only six hours in an eight-hour workday, the ALJ stated that he did not agree with the opinion and therefore assigned it less weight. (Tr. 33). The ALJ explained that when asked to explain the medical or clinical findings that support his assessment, "the provider only stated 'back pain exacerbation.'" (Tr. 33). The ALJ noted that "is not an objective finding." (Tr. (Tr. 33). The ALJ further explained that the opinion was unclear as to whether the six hour limitation applied only when an exacerbation was present, and that there was no explanation regarding how often claimant had back pain exacerbation. (Tr. 33). Indeed, a review of the record reveals that Dr. Seymour provided no explanation regarding the apparent limitation to only 6 total hours in an 8 hour workday, as he left the portion of the form blank where he otherwise could have provided an explanation regarding the medical or clinical findings that supported his assessment. (Tr. 1492). Elsewhere Dr. Seymour provided the explanation of "chronic back pain" or "back pain exacerbation" regarding postural limitations and limitations regarding the use of feet. (Tr. 1493-94). Notably, the ALJ agreed with the opinion to the extent he assessed restrictions consistent with light to medium work, and ultimately determined claimant could perform only a range of light work and needed to alternate positions. (Tr. 33).

Upon consideration, the undersigned concludes that substantial evidence supports the ALJ's decision to give Dr. Seymour's opinion less than great weight. As the ALJ observed, Dr. Seymour identified few findings to support his opinion. And, Dr. Seymour's own treatment notes throughout 2008 show few back or lower extremity problems, full lower extremity strength, and an unremarkable lumbar MRI. (Tr. 587-97, 619, 683). From 2009 through 2010, Dr. Seymour's

Seymour's notes show few musculoskeletal or back complaints, and no abnormal musculoskeletal or back testing. (Tr. 29, 582-86, 1081-83, 1246-55).

And, as Defendant notes, claimant saw Lan Knoff, M.D. (another doctor in Dr. Seymour's practice) regarding back pain in 2009, but Dr. Knoff's notes also fail to support Dr. Seymour's opinions. Dr. Knoff's examinations revealed generally normal findings, back pain of vague etiology, and unremarkable exam testing aside from some testing and a recommendation for physical therapy. (Tr. 703, 704). Dr. Knoff noted that trigger point injections appeared to help, and further noted that pain appeared to increase with heavy activity such as shoveling snow or lifting hay. (Tr. 29, 703-04). In March 2009, a physical therapy assessment showed reduced strength, but only mild limitation in lumbar range of motion, and included recommendations for core strengthening and stretching. (Tr. 29, 848). In April 2009, Dr. Knoff ordered a lumbar MRI, which showed disc degeneration at one level, but no other significant abnormalities, and claimant was deemed stable and functioning at a "very adequate level." (Tr. 29-30, 615-17, 625-26).

Plaintiff argues that the ALJ's articulated basis for discounting Dr. Seymour's opinion is flawed. Plaintiff's argument is that it was inappropriate to discount Dr. Seymour's opinion due to uncertainty regarding the meaning behind the limitation to 6 hours of light-medium work. Plaintiff argues that, instead, the ALJ should have sought clarification by taking action if the evidence was insufficient, citing 20 C.F.R. § 404.1520b(c). In response, Defendant contends that the ALJ's decision shows he considered all the evidence and was able to reach a conclusion regarding disability despite Dr. Seymour's failure to explain some limitations. The Court agrees.

Good cause exists here for the ALJ to discount Dr. Seymour's opinion both because it is not bolstered by the evidence, and because evidence supports a contrary finding, as explained

above. Record evidence such as Dr. Seymour's treatment notes, objective medical findings, and the treatment notes of Dr. Knoff support both the ALJ's RFC and the ALJ's decision to partially discount Dr. Seymour's opinion about physical limitations. It is apparent from the ALJ's decision decision that he carefully considered all the evidence. And, uncertainty regarding the meaning of of Dr. Seymour's opinion was not the only reason the ALJ discounted the opinion. The ALJ also specifically stated that Dr. Seymour's opinion was not based on objective findings. (Tr. 33).

The undersigned acknowledges that the record does contain some evidence that could, theoretically, support greater limitations than included in the RFC. The Court's task here, however, is not to re-weigh the evidence. Rather, the question before me is whether the Commissioner's decision is supported by substantial evidence. If so, I must affirm, even if I might have reached a contrary result as finder of fact, and even if I were to find that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3.

For the reasons explained above, the ALJ did not err in evaluating the opinion of Dr. Seymour, and the ALJ's RFC finding is supported by substantial evidence.

2. Ms. Christine Pinello, MSW

Plaintiff next argues that the ALJ failed to properly evaluate the opinion of Ms. Pinello, a vocational rehabilitation counselor. Ms. Pinello provided services to claimant regarding a hearing impairment. She described her own observations regarding his back impairment and functioning, and noted that he was unable to sit comfortably for very long, and was unable to stand for more than a few minutes, and had difficulty lifting. (Tr. 1431-32). She opined that he looked "many years older than his actual age." (Tr. 1432).

While Plaintiff acknowledges Ms. Pinello's opinion is that of a non-medical source, she argues that the ALJ failed to properly evaluate it because the ALJ overlooked the fact that Ms.

Pinello had seen claimant in 2011, as well as 2005 and 2006. Plaintiff argues that the opinion of a non-medical source may outweigh that of a medical source if the non-medical source has seen the individual often and has greater knowledge of the person's functioning, citing SSR 06-03, 1996 WL 374186 (S.S.A. 1996).

In his decision, the ALJ explicitly discussed the opinion of Ms. Pinello, a vocational rehabilitation counselor and social worker. The ALJ discussed Ms. Pinello's findings in the context of her evaluation of his hearing problems. (Tr. 33). Specifically, the ALJ summarized Ms. Pinello's opinion regarding Plaintiff's hearing abilities, noted Ms. Pinello is a social worker, and observed that Ms. Pinello did not identify the source of her information. (Tr. 33). The ALJ implicitly discounted her opinion, and instead stated that he gave greater consideration to the evaluations of audiologist Ms. McHugh and Dr. Morrison. (Tr. 33). In crediting those opinions, the ALJ acknowledged the claimant's hearing loss, and accommodated it in the RFC by providing for a semi-quiet work setting. (Tr. 34).

First, Defendant correctly notes that Ms. Pinello was a social worker, and therefore is not an acceptable medical source, but an "other" source, citing 20 C.F.R. §§ 404.1502, 404.1513(a), (d). Such opinions are not medical opinions and are not entitled to any special consideration. 20 20 C.F.R. §§ 404.1513(a), (d), 404.1527(a)(2); SSR 06-3p, 2006 WL 2329939 (S.S.A). ALJs are generally not required to articulate specific reasons for discounting opinions from other sources. *See Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014). Nonetheless, the ALJ ALJ did explicitly consider Ms. Pinello's opinion and articulated reasons for discounting it. Further, as to the portions of the Ms. Pinello's opinion related to Plaintiff's physical functioning, the ALJ's decision to discount those opinions is supported by substantial evidence. The undersigned has described above much of the substantial evidence that supports the ALJ's finding

regarding physical limitations, such as Dr. Seymour's treatment notes, objective medical findings, and Dr. Knoff's treatment notes. And, it is worth noting that Ms. Pinello's opinions regarding Plaintiff's ability to sit and stand are generally encompassed within the ALJ's RFC finding. Finally, it is apparent that the ALJ considered claimant's condition as a whole, including the evidence from Ms. Pinello. *See Dyer v. Barnhart*, 395 F.3d 1296, 1211 (11th Cir. 2005) (stating "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole."). For these reasons, the ALJ did not err in considering the opinion of Ms. Pinello.

## B. The ALJ's Consideration of Plaintiff's Mental Limitations

Plaintiff next argues that the ALJ erred by failing to properly assess the claimant's mental limitations, and that the mental RFC is erroneous and not based on a proper evaluation of the record. Specifically, Plaintiff argues that the ALJ failed to give proper consideration to the opinions of Terry Padilla, LCMHC, a mental health counselor, and Dr. Seymour, claimant's treating physician.

### 1. Terry Padilla, LCMHC

Plaintiff first argues that the ALJ erred by only assigning "little" weight to the opinions of Terry Padilla, who was the state agency consultant. The records from that exam reflect few, if any, opinions regarding specific mental limitations, although she opined claimant would require assistance managing funds and assigned a GAF score of 52, indicting moderate symptoms. (Tr. 31-32, 1373-76). Ms. Padilla opined that claimant's physical problems appeared to be disabling, and he was unable to perform past jobs. (Tr. 32, 1376).

The ALJ expressly considered Ms. Padilla's patient notes and evaluation, and observed that no work-related functional limitations related to a mental impairment were assigned, other than the opinion regarding managing funds and assigning a GAF score of 52. Indeed, Plaintiff does not identify any particular aspect of Ms. Padilla's report that should have been included in the RFC. And, as Defendant argues, the ALJ did include mental limitations consistent with moderate mental limitations in the RFC finding, consistent with Ms. Padilla's GAF assessment. The claimant's RFC includes restrictions to simple, unskilled work, a low stress-environment, and other mental limitations addressing attention, concentration and social interaction. (Tr. 25). Notably, Plaintiff does not argue that Ms. Padilla's report regarding mental functioning is inconsistent with the RFC. *See Shaw v. Astrue*, 392 F. App'x 684, 687 (11th Cir. 2010) (finding no reversible error where the ALJ did not address some of an examining physician's findings, where those findings were not inconsistent with the RFC findings and the ALJ relied on the physician's opinion); *Scott v. Astrue*, No. 5:10-CV-111-FTM, 2011 WL 1058960, at *7 (M.D. Fla. Mar. 21, 2011) ("[A]ny argument concerning the ALJ's success or failure to specifically assign any weight to [the doctor's] opinion is not well taken because [the doctor] is a[n] one-time examiner and a non-treating physician and his opinion is consistent with the ALJ's decision.")

To the extent that Plaintiff's argument implies that the ALJ should have credited Ms. Padilla's observations that claimant appeared to be "quite disabling," and he was unable to do physically strenuous past jobs, that argument is unavailing. The ALJ explicitly considered those observations and noted that such conclusions are reserved for the Commissioner and was not an opinion concerning work-related functional limitations. (Tr. 32). The ALJ also noted that Ms. Padilla's conclusions were based on claimant's self-reported symptoms, and there was no evidence

Ms. Padilla, as a licensed mental health counselor, had any special expertise in evaluating physical work-related functional limitations. (Tr. 32).

As Defendant argues, the RFC finding regarding mental health limitations is supported by substantial evidence of record, including a long history of treatment notes from Clara Martin Center from September 2008 through 2010 which show unremarkable mental status findings, full orientation, cooperative and engaged behavior, and generally normal affect. (Tr. 985-86, 990. 996-99, 1001, 1003-06, 1008-11, 1013-14, 1050, 1056, 1059, 1068, 1071, 1146-48, 1152-53, 1156-59, 1162-64, 1166, 1168-71, 1173, 1177, 1179-80, 1182, 1186-87, 1189, 1191, 1193, 1195, 1198, 1201, 1209, 1211, 1213, 1216, 1218). Notes regarding claimant being difficult to engage or depressed are the exception, whereas most of the treatment notes reflect cooperative and engaged behavior and a generally normal mental status. (Tr. 1150). And, claimant's treatment records from Clara Martin Center in 2011 show only moderate mental limitations, and reflect claimant was open, cooperative, and engaging, with a stable mood and normal or fair range of affect, although reported feeling sad and depressed during visits in May 2011. (Tr. 1135-36, 1139-41, 1143, 1333-38, 1341-42, 1369, 1372).

The ALJ's mental RFC finding is also supported by the November 2009 consultative examination of psychologist Dennis Reichardt. (Tr. 1207). Dr. Reichardt assigned claimant a GAF of 60, indicating moderate difficulties, and noted claimant scored 29/30 on the mini-mental status examination and had logical and coherent thinking. (Tr. 1205-07). Dr. Reichardt noted that claimant may have verbal learning problems, but that his nonverbal abilities were apparently stronger based on his past work experience. (Tr. 1207). Dr. Reichardt noted that claimant could likely be able to retain employment, depending upon medical confirmation of his physical limitations. (Tr. 1207). The ALJ gave great weight to this opinion regarding mental functioning,

functioning, noting Dr. Reichardt's expertise as a psychologist and the consistency of his conclusions with his exam findings. (Tr. 33).

The Court agrees that the ALJ's RFC finding regarding claimant's mental limitations is supported by substantial evidence, as described above, including the treatment notes from Clara Martin Center, and the opinion of Dr. Reichardt. Likewise, and for the same reasons, the ALJ's RFC, and the decision to assign great weight to Dr. Reichardt's opinion, and to assign lesser weight to the opinion of Ms. Padilla, is supported by substantial evidence.

### 2. Dr. Seymour's Opinion

Finally, Plaintiff argues that the ALJ erred in considering the opinions of claimant's treating physician, Dr. Seymour, regarding mental functioning. Plaintiff specifically argues that, despite otherwise affording his opinions great weight, the ALJ ignored Dr. Seymour's opinion that claimant's ability to concentrate and follow through on task completion was impaired due to depression. (Tr. 32, 1461). Plaintiff contends that the RFC for simple, unskilled work, with limitations to maintaining attention and concentration for two-hour increments throughout an eight-hour workday fails to account for Dr. Seymour's opinion that claimant's ability to concentrate and follow through on task completion was impaired due to depression. Likewise, Plaintiff argues that the ALJ's finding that claimant could sustain routine social interaction with supervisors fails to account for Dr. Seymour's opinion that claimant had moderate difficulty interacting appropriately with supervision.

It is Plaintiff's burden to demonstrate that the claimant has limitations greater than those incorporated in the RFC. Here, Plaintiff has failed to establish that the RFC is inconsistent with Dr. Seymour's opinion regarding claimant's ability to concentrate, or that it is inconsistent with the opinion regarding moderate difficulty interacting appropriately with supervisors. A review of

of the ALJ's opinion makes it apparent that the ALJ did consider the opinions of Dr. Seymour in detail. Importantly, the ALJ discussed Dr. Seymour's opinions at length and specifically noted that Dr. Seymour assigned only mild limitation regarding simple instructions, and marked restriction related to complex instructions, which the ALJ noted would not preclude simple work and maintaining attention and concentration for two-hour periods over an eight-hour work day. (Tr. 32). The ALJ also noted Dr. Seymour's conclusions were consistent with mental health counselling notes. (Tr. 32).

Further, to clarify, the opinions of Dr. Seymour upon which Plaintiff relies are in the form of check marks in boxes on the Medical Source Statement form. (Tr. 1462). He assigned moderate restrictions for interacting appropriately with the public, supervisors, and co-workers, and for the ability to respond appropriately to usual work situations and to changes in a routine work setting. (Tr. 1462). By checking the boxes for "moderate" restrictions, Dr. Seymour clearly chose the mid-range level, as opposed to "none," "mild," "marked" or "extreme," which are the other options on the form. (Tr. 1462). Plaintiff argues that the ALJ's finding that claimant could sustain routine social interaction with supervisors is inconsistent with Dr. Seymour's opinion regarding moderate difficulty in interacting appropriately with supervisors. The undersigned, however, does not agree.

First, contrary to Plaintiff's assertion, it appears that the ALJ did, in fact, explicitly account for Dr. Seymour's opinion regarding moderate limitations in interacting with supervisors. As Defendant argues, the ALJ did restrict claimant to only "routine" interactions with supervisors in a work setting that involves little to no change and little to no need for the use of judgment. (Tr. 25). Indeed, context is important here. Claimant's restriction to routine interaction with supervisors was in the context of "simple-unskilled work in a low-stress environment (defined as

requiring little to no change in the work setting and little to no need for the use of judgment)." (Tr. 25). The ALJ notably did not make an RFC finding that lacked any limitation regarding interaction with supervisors, nor did the ALJ make a finding that would suggest a greater capacity to interact appropriately with supervisors, such as that claimant could work in close proximity to supervisors.[4] Plaintiff offers no support for her assertion that the ALJ rejected Dr. Seymour's opinion regarding moderate difficulty interacting appropriately with supervisors. And, the case cited by Plaintiff is not applicable because it involved an ALJ's failure to account for a medical opinion that a claimant had marked (rather than moderate) limitations in the ability to interact with co-workers and supervisors. *See Pfeiffer v. Astrue*, 576 F. Supp. 2d 956, 962 (W.D. Wis. 2008).

Further, Plaintiff has not demonstrated that a more restrictive RFC, such as one limiting claimant to only occasional interaction with supervisors, would change the result. During the hearing on October 23, 2014, Plaintiff's counsel asked the vocational expert to opine in response to a hypothetical regarding an individual of similar age and education, but limited to sedentary work and including restrictions such as limited social contact or interaction with the general public, and occasional interaction with a supervisor. (Tr. 58). In response, the vocational expert identified numerous jobs that could be performed with those limitations, including parimutuel-ticket checker, fishing reel assembler, or final assembler. (Tr. 58). In light of this evidence, it is is apparent that remand on this issue would not change the result. *See Sanchez v. Comm'r of Soc. Sec.*, No. 12–11762, 2013 WL 490029, *1 (11th Cir. Feb. 8, 2013) ("We have also declined to

---

[4] For example, compare the RFC in the instant case with this RFC: "The claimant could perform simple, routine, repetitive tasks; have occasional contact with the public; could work in close proximity to coworkers and supervisors, but would work best independently; and occasionally adapt to changes in work setting that are introduced gradually over the course of 1–2 days." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1043 (S.D. Ala. 2016), *judgment entered,* No. CV 14-00449-C, 2016 WL 1357753 (S.D. Ala. Apr. 5, 2016).

remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (quoting *Ware v. Schweiker*, 651 F.2d 408, 412–13 (5th Cir. Unit A 1981)).

### IV. RECOMMENDATION

For the reasons stated above, it is respectfully recommended that the ALJ'S decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE and ENTERED** in Ocala, Florida on April 28, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Parties